IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

GAYLE J. EVANS, JR.                                          PLAINTIFF

v.                                    CAUSE NO.: 5:22-CV-00037-DCB-BWR

CHANCE J. EVANS                                              DEFENDANT

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Second Supplemental Motion for Attorneys' Fees. [ECF No. 122]. The Court previously held that Defendant is entitled to an award of reasonable attorney fees and costs expended to enforce the parties' settlement agreement.[1] The only issue at this point is the amount to be awarded.

---

[1] In the Court's order that enforced the parties' settlement agreement [ECF No. 109], which was affirmed by the Fifth Circuit Court of Appeals, Evans v. Evans, 125 F.4th 1213 (5th Cir. 2025), the Court held:

> Because Plaintiff has breached the agreement, Defendant is entitled to enforcement of the settlement. Under the express terms of the Order of Dismissal, Defendant also is entitled to recover his attorneys' fees and costs expended in enforcing the settlement from the date of the Order. The Court will review and rule on a properly presented motion for attorneys' fees, should Defendant wish to file one with the Clerk of Court.

[ECF No. 109] at 10.

1

BACKGROUND

The Court held an in-person hearing on April 29, 2025, during which it gave both parties the opportunity to present their arguments, evidence, and objections regarding the amount of attorney fees to be awarded. Prior to the hearing, Defendant had asked the Court for $94,275.49 in legal fees and expenses based on (i) 394.15 hours worked from 7/20/2023 until 1/22/2025; and (ii) expenses of $5,331.74. [ECF Nos. 122 & 122-1]. At the hearing, defense counsel Lane Reed from the law firm of McGehee, McGehee & Torrey testified that his firm had discovered a double-counting error on their invoice. When corrected, the total amount of the invoice for legal fees and expenses was reduced to $86,047.99 based on (i) 358.05 hours worked from 7/20/2023 until 04/29/2025; and (ii) expenses of $5,581.74. Defendant submitted into evidence a revised cumulative invoice for the corrected total. Ex. D-10, [ECF No. 140-10]. Mr. Reed further testified that the firm's invoice was reviewed for excessive or unproductive time, which was removed. Hr'g Tr., [ECF No. 143] at 51. On direct and cross examination, Mr. Reed described in detail the extensive and time-consuming efforts that he and his colleagues expended in their attempts to enforce the parties' settlement agreement and in their successful defense when Plaintiff appealed to the United States Fifth Circuit Court of Appeals. Id. at 8-69. The Court also heard testimony from Lucien C. Gwin, III, a Natchez attorney who has practiced law

in federal and state courts for over forty years. <u>Id.</u> at 69-74. On direct examination by defense counsel, Mr. Gwin testified that he had reviewed defense counsel's fee invoice, the pleadings, orders, and other parts of the record. Based on his review and given the circumstances of this case, Mr. Gwin opined that the amount charged and the hours worked were reasonable. <u>Id.</u> When handed a copy of the corrected invoice (Ex. D-10, [ECF No. 140-10]), Mr. Gwin specifically testified:

> Q.   All right. And can you look on the back of that bill? I think it will tell you the total hours.
>
> ...
>
> A.   Oh, 358 hours. Yes.
>
> Q.   And, Mr. Gwin, does that seem like a reasonable amount of hours spent for a case like this?
>
> A.   Based on what I have heard Lane [Reed] testify to today and what I have reviewed with the pleadings, the orders, and so forth, yes, it does.
>
> Q.   All right. And you heard -- also heard Mr. Reed testify about his rate of 250 an hour, my rate of 250 an hour, and our associate rate of 225 an hour, as well as our clerk rate of $75 an hour. Do you believe those rates to be reasonable?
>
> A.   Absolutely.
>
> Q.   All right. And, finally, are you familiar with McGehee, McGehee & Torrey?
>
> A.   I am.
>
> Q.   All right. And can you tell me what you know of the history of that law firm?
>
> A.   Excellent law firm. My dad used to say that Mayes McGehee was one of the finest lawyer he ever knew.

3

>    Q.   All right. So there is a good reputation there, skilled attorneys?
>
>    A.   Excellent reputation.

Hr'g Tr., [ECF No. 143] at 71-73.  Plaintiff's counsel declined to cross examine Mr. Gwin and offered no expert or other witness to contradict any part of Mr. Gwin's testimony.  Before dismissing Mr. Gwin from the witness box, the Court asked whether he found the total of 394 hours billed on the first (uncorrected) bill to be excessive.  Id. at 73.  Relying on personal experience, Mr. Gwin testified that he found the number of hours worked to be reasonable under the circumstances.  Id. at 73-74.

Plaintiff's counsel called only one witness to the stand: Plaintiff Gayle J. Evans, Jr.  Very little of Plaintiff's testimony related to attorneys' fees.  His only testimony even tangentially related to fees was to declare that he had no money to pay them:

> I heard y'all talking about, you know, they want money for their lawyers when, you know, that judge up there,[2] he -- he asked the same thing of that judge, but he didn't give it to him. I ain't got any money. I have spent all of my money, even Natchez money, on that ranch, making it, you know, be a good ranch. It's a good cattle ranch.

Id. at 78 (footnote not in the original).

---

[2] It is the Court's understanding that Plaintiff's reference to "up there" means Montana, where the family's ranch is located and where the parties, according to Plaintiff, are litigating a separate lawsuit.  See Hr'g Tr., [ECF No. 143] at 78 ("In fact, he is suing me in Montana right now in federal court, and Judge John Johnston is the judge there.").

4

In response to questioning from the Court, Plaintiff's counsel voiced scant opposition to the requested fees:

> THE COURT:  And so, now, back to you, Mr. Dowdy.  We have talked about this LLC.  What about the attorneys' fees that counsel opposite is requesting for Chance Evans?
>
> MR. DOWDY:  We feel that the request is unreasonable, Judge.  Apparently they had one case in that law office right now.  And we object to an award, Your Honor.  We – my client is going to pay his attorney and out of his fee -- out of his income.  And, Your Honor, there's -- there's just a question of trust.

Id. at 89.

In addition to the live testimony at the hearing, Defendant offered into evidence the affidavits of the three attorneys in the law firm of McGehee, McGehee & Torrey who worked on the case, Ex. D-11, [ECF No. 140-11], and the affidavit of appellate attorney S. Mark Wann.  Ex. D-12 [ECF No. 140-12].  Mr. Wann gave his opinion, based on his personal knowledge and experience from his federal and state court appellate practice, that "$275.00 -$325.00 per hour represents a reasonable hourly rate for appellate practice."  Id. at ¶ 3.  The highest hourly attorney rate charged for the appellate work described on the corrected invoice that McGehee, McGehee & Torrey submitted to the Court is $250.00 per hour. Ex. D-10, [ECF No. 140-10].

## GOVERNING LAW

Because the Court has jurisdiction of this matter based on

5

diversity of citizenship, state law governs the award and reasonableness of attorneys' fees. Bank of Louisiana v. SunGard Availability Servs., L.P., 374 F. App'x 539, 542-43 (5th Cir. 2010); Affordable Care, LLC v. JNM Off. Prop., LLC, No. 1:19CV827-HSO-RPM, 2022 WL 3271092, at *3 (S.D. Miss. Aug. 10, 2022). In Mississippi, the determination of what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court. Mauck v. Columbus Hotel Co., 741 So. 2d 259, 269 (Miss. 1999); Deer Creek Const. Co. v. Peterson, 412 So. 2d 1169, 1173 (Miss. 1982); accord Weeks v. S. Bell Tel. & Tel. Co., 467 F.2d 95, 97 (5th Cir. 1972) ("The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge.").

In determining the reasonableness of an attorney fee award, Mississippi courts turn to the factors listed in Rule 1.5(a) of the Mississippi Rules of Professional Conduct[3] and to

---

[3] Rule 1.5(a) provides:

**(a)** A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;

6

the "strikingly similar" factors set out in McKee v. McKee, 481 So.2d 764, 767 (Miss. 1982).[4]  See Tupelo Redevelopment Agency v. Gray Corp., 972 So. 2d 495, 521 (Miss. 2007) ("The *McKee* factors are strikingly similar to the factors set out in Miss. R. Prof. Conduct 1.5(a).").

The McKee/Rule 1.5(a) factors are also substantively identical to the factors followed by the Fifth Circuit and the United States Supreme Court in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated by Blanchard v. Bergeron, 489 U.S. 87 (1989); Hensley v. Eckerhart, 461 U.S. 424 (1983); Bay Point Props., Inc. v. Miss. Transp. Comm'n, 304 So. 3d 606, 609-10 (Miss. 2020).  Because the factors considered under state and federal law are nearly

---

(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

Miss. R. Pro. Conduct 1.5(a).

[4] In McKee, the Mississippi Supreme Court stated that the factors to be considered in an award of attorneys' fees include "the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case."  McKee, 481 So.2d at 767.

identical, both state and federal cases are instructive. Under both sets of cases, the most useful starting point for determining the amount of a reasonable fee is the lodestar method, which is the "number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." Mauck, 741 So.2d at 271 (citing Hensley, 461 U.S. at 433); Saizan v. Delta Concrete Products Co., 448 F.3d 795, 799 (5th Cir. 2006) (first step in determining an appropriate fee award is the lodestar calculation).

Once the lodestar has been calculated, Mississippi courts must consider the amount in light of the McKee/Rule 1.5(a) factors and determine whether any adjustments to the lodestar amount are needed. Tupelo Redevelopment, 972 So. 2d at 522; Matter of Est. of Stimley, 395 So. 3d 441, 446 (Miss. Ct. App. 2024)("… a consideration of the Rule 1.5/*McKee* factors is mandatory."); see also Blanchard, 489 U.S. at 94; Stuart C. Irby Co. v. Hansen Contracting, Inc., No. 3:23-CV-3118-KHJ-MTP, 2024 WL 1494428, at *1 (S.D. Miss. Apr. 5, 2024).

## ANALYSIS

The Court begins its analysis by determining the lodestar amount. The record in this case and the testimony at the hearing leaves this Court with no room for doubt that the amount of Defendant's voluntarily corrected and reduced invoice - $86,047.99 - represents a reasonable attorneys' fee under the

8

lodestar method. [ECF No. 140-10]. Plaintiff's refusal to honor his settlement agreement and his refusal to comply with the Court's settlement enforcement order [ECF No. 109], along with his unsuccessful appeal to the Fifth Circuit, inevitably resulted in a high number of attorney hours being expended on both sides of this case. Based on the hearing testimony of Mr. Reed, the Court is satisfied that defense counsel double-checked its invoice for accuracy, eliminated duplicate billing entries, and presented the Court with what defense counsel believes to be an accurate accounting of the valid and appropriately billable legal time spent to enforce the settlement. Hr'g Tr. [ECF No. 143] at 41-42. The uncontroverted testimony of experienced local litigator, Mr. Gwin, indicated that the total number of hours billed on the McGehee, McGehee & Torrey invoice was reasonable considering the circumstances of this case. Id. at 73-74.

With respect to defense counsel's hourly rates of $250 for partners, $225 for an associate, and $75 for a law clerk, the testimony and evidence entered at the hearing indicate that these rates are well within the current range of market rates for civil litigation trial and appellate attorneys customarily charged in the locality. Id. at 47-48, 72; [ECF No. 140-11]; [ECF 140-12]. Plaintiff introduced no evidence to the contrary at the hearing or anywhere else throughout these proceedings,

and the Court finds nothing in the record of this case that proves otherwise. Having found the reasonable lodestar amount to be $86,047.99, the Court must apply the McKee/Rule 1.5(a) factors to the facts and evidence to determine whether adjustments to the lodestar are warranted. The Court's task is made easier because Plaintiff presented no persuasive evidence, argument or witness testimony at the hearing that would merit adjustments under McKee or Mississippi Rule of Professional Conduct 1.5(a).

As mentioned, the only witness called to testify for Plaintiff at the hearing was Plaintiff himself. Plaintiff's testimony regarding his lack of money to pay Defendant's attorney fees does not qualify for a lodestar adjustment. Considering "the relative financial ability of the parties," as trial courts are instructed to do under the first McKee factor, McKee, 481 So.2d at 767, the Court only has Plaintiff's unsupported statement at the hearing that he "ain't got any money", and no financial records or other evidence to prove the relative financial ability of the parties. Hr'g Tr., [ECF No. 143] at 78. More importantly, this entire litigation is centered on the parties' valuable inherited assets. Plaintiff may be "cash poor" as he claims, but he also has claimed throughout this litigation to have interests in valuable assets – such as a "good cattle ranch" in Montana - that negate the

10

need for an adjustment to the lodestar amount.  <u>Id.</u>

At the hearing, when the Court asked Mr. Dowdy, Plaintiff's counsel, for his position on attorneys' fees, counsel responded with three points:  (i) an unsupported assumption that this case was the only one being handled in the law office of McGehee, McGehee & Torrey; (ii) Plaintiff had to pay legal fees out of his income; and (iii) counsel's belief that there was a question of trust.  Hr'g Tr., [ECF No. 143] at 89.

Regarding counsel's first point, Mr. Dowdy's statement at the hearing is unclear as to the timeframe.  As transcribed, he stated: "***Apparently*** they had one case in that law office ***right now***."  <u>Id.</u> (emphasis added).  If counsel meant to say that McGehee, McGehee & Torrey only was working on the <u>Evans</u> case and had no other legal work at the time of the hearing, April 29, 2025, this is uncorroborated and strikes the Court as speculative.  If Mr. Dowdy is referring to the end of 2024 through the oral argument at the Fifth Circuit January 2025, defense counsel explained in affidavits from the three attorneys who worked on this case and in the testimony of Mr. Reed at the hearing that some of their typical end-of-the-year transactional business and real estate closings in December 2024 had to be put to the side or turned away in order to meet appellate deadlines at the Fifth Circuit.  <u>Id.</u> at 46 ("I know we had to turn down

11

certain work in order to comply with the Fifth Circuit's request, demands."); [ECF No. 140-11] at 6-7 ("I was forced to turn away real estate closings and delay domestic matters during this time frame."), 9-10 ("Short deadlines were issued in mid-December by the Fifth Circuit Court of Appeals which caused the loss of work in my real estate practice."). Under the seventh McKee factor, (i.e., "the preclusion of other employment by the attorney due to the acceptance of the case"), turning down regular work would argue in favor of finding the fees charged by defense counsel to be reasonable, not unreasonable. McKee, 481 So.2d at 767.

Mr. Dowdy's second point – that his client would have to pay attorney fees out of his income – has no bearing on a determination of reasonableness under the McKee/Rule 1.5(a) factors. His final point regarding a question of trust ("And, Your Honor, there's -- there's just a question of trust") is unclear and gives no explanation of the nature of the alleged mistrust. In any event, this unidentified question is too nebulous to be tied to any factor of consideration under McKee/Rule 1.5(a) and has no effect on the Court's determination of reasonableness.

Additionally, the Court has reviewed Plaintiff's brief in opposition to Defendant's pending motion for attorneys' fees.

12

<u>See</u> opposition at [ECF No. 128]. Plaintiff's brief presents but one argument in opposition to an award of attorneys' fees: the case is moot because the parties signed a new nursing home lease effective January 1, 2025.[5] A newly signed lease does not change the fact that Plaintiff reneged on the settlement agreement (which happened long before the new lease came into effect), and that Defendant incurred legal fees from 7/20/2023 until 04/29/2025 in his efforts to enforce the parties' settlement. Like the Fifth Circuit, the Court finds the new lease to be independent of the issue before the Court.

## CONCLUSION

In closing, the Court must consider a recent order of remand from the Fifth Circuit Court of Appeals, which states in part:

> IT IS ORDERED that consideration of sanctions stemming from this court's December 18, 2024, Order to Show Cause—over which we originally retained jurisdiction—

---

[5] The Fifth Circuit rejected this argument on appeal when Plaintiff/Appellant attempted to have his appeal dismissed as moot:

> Gayle also argues that the parties' leasing the relevant property to a new tenant moots this case. But the case is not moot because the lease agreement is independent of this litigation, Chance still seeks to form the LLC agreed on in the settlement, and Gayle continues to renege.

<u>Evans v. Evans</u>, 125 F.4th 1213, 1214 (5th Cir. 2025); Fifth Circuit opinion also reproduced in full at [ECF No. 120].

13

is now REMANDED to the district court. Unpublished Order dated June 4, 2025, Fifth Circuit Court of Appeals Case No. 24-60152, reprinted in full at [ECF No. 142]. The order of remand relates to an Order to Show Cause (reprinted at [ECF No. 121]) that the Fifth Circuit issued to Plaintiff when he defied the appellate court's order to appear personally for the oral argument of his appeal on January 8, 2025.  Defense counsel addressed the remand order during the recent district court hearing: "We don't take a position on that. We leave that to the sound discretion of this Court."  Hr'g Tr., [ECF No. 143] at 82.  Given that Plaintiff followed this Court's order and appeared in person at the district court hearing and considering that Defendant voluntarily waived his opportunity to argue for further sanctions, the Court declines to impose sanctions on Plaintiff personally for his failure to appear in person at his Fifth Circuit oral argument.

The Court has considered all arguments, testimony, and evidence presented by the parties in their submissions and at the hearing on attorney fees held on April 29, 2025.  Any argument not expressly addressed in this Memorandum Opinion and Order would not change the outcome.

Accordingly,

**IT IS ORDERED that** Defendant's Second Supplemental Motion for Attorneys' Fees [ECF No. 122] is **GRANTED,** and Plaintiff is

15

ordered to pay Defendant a total of $86,047.99 in fees and expenses.

SO ORDERED, this the 8th day of July 2025.

                                               /s/ David C. Bramlette
                                      UNITED STATES DISTRICT JUDGE